**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

OMAR MADDOX,             )
                                    )
        Plaintiff,          )      Civil Action No. 19-1163
                                    )      Magistrate Judge Maureen P. Kelly
        v.               )
                                    )      Re: ECF Nos. 56 and 57
SUPERINTENDENT ROBERT GILMORE, )
LT. MEDVEC, C.O. GUMBERT, C.O.    )
SAYLOR, C.O. COLLINS, C.O.       )
ZACHARANIC, and SGT. SANTI,    )
                                    )
        Defendants.      )

## OPINION

      Plaintiff Omar Maddox ("Maddox") initiated this *pro se* civil right action against officials and officers at the State Correctional Institution at Green ("SCI – Greene") alleging in relevant part that Defendants violated his rights under the Eighth Amendment to the United States Constitution during an unplanned use of force incident.[1]

      Presently before the Court is a Motion for Summary Judgment filed on behalf of Defendants Lt. Medvec, C.O. Gumbert, C.O. Saylor, C.O. Collins, C.O. Zacharanic, and Sgt. Santi (collectively, "Defendants"), ECF No. 57, and a Motion for Summary Judgment filed by Maddox, ECF No. 56.  For the reasons that follow, the Defendants' Motion for Summary Judgment is granted, and Maddox's Motion for Summary Judgment is denied.[2]

---

[1] By Order dated March 3, 2020, judgment on the pleadings was entered in favor of Defendants as to Plaintiff's claims under the First and Fifth Amendments to the United States Constitution, the Department of Corrections' Code of Ethics, and as to all claims against Defendant Superintendent Gilmore.  ECF No. 31.

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case.  ECF Nos. 26 and 28.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This action arises out of an unplanned use of force against Maddox on August 11, 2017, when Maddox was observed taking food from another inmate's meal tray and refused to obey a series of orders issued by corrections officers.  The record includes Maddox's verified Complaint, an inmate grievance and a separate grievance response, incident reports filed by all involved officers, surveillance videos that captured portions of the events at issue, and departmental investigations of Maddox's claims of abuse.  ECF Nos. 8, 55-1, 59.  Upon review, the evidence establishes that there are no genuine disputes as to any material facts and that measured force was used to restore order and obtain Maddox's compliance with several direct orders that he persistently ignored or verbally and physically challenged.

In his Complaint, Maddox concedes that he refused an order to return another inmate's steak sandwich and then refused orders to leave the dining hall, opting instead to finish his meal. Id. at 2.  When he eventually left the dining hall, Maddox admits he challenged Defendant Santi's instructions to proceed to disciplinary custody and "wave[d] his hand." Id.  When ordered to put his hands down, Maddox acknowledges that he raised both hands to shield his face from the potential use of oleoresin capsicum ("OC") spray.  Id.  He again was ordered to put his hands down and to "cuff up" to be transferred to "the hole."  Maddox states he orally challenged this directive and at that point, "someone behind me grabbed my glasses and lifted them up while Officer Collins sprayed me directly in my eyes." Id.  Maddox was taken to the ground and alleges he was sprayed again, this time in the nose.  In the process of being pinned to apply handcuffs, Maddox claims several officers leaned on his torso, his legs, and his back, and made it difficult to breathe.  Maddox alleges one of the officers "was on his head," but he "managed to pull my arms free and wrapped them around this officer's thigh pulling his leg toward my head lifting his pelvis and penis… off

my head." <u>Id.</u> Maddox states he heard "stop biting me" and that an officer struck him with handcuffs against the side of his head.  At this point, Maddox states he was sprayed in his right ear, handcuffed, lifted, taken to medical for OC decontamination and treatment and then placed in the Restricted Housing Unit ("RHU").  <u>Id.</u>

  Surveillance video provided to the Court does not depict the initiation of the use of force; however, the available video shows that while Maddox was on the ground, officers struggled to restrain him and deployed OC spray to gain compliance.   ECF No. 59 (Exhibit G, Disc #1). Viewing this evidence in a light most favorable to Maddox, there are no gratuitous punches or swings with handcuffs or otherwise and that officers, with knees on the ground, surround Maddox but are not on top of his torso or head.  The incident quickly ends after OC spray is deployed again, exposing Maddox and at least two corrections officers to its effects.  <u>Id.</u>

  In the Complaint and through his facility appeal of misconduct charges, Maddox confirms the reasons for the use of force, including his refusal to comply with a series of commands to restore discipline and order, raising his hands despite orders to keep them down, and combatting officers who attempted to secure him with handcuffs.  ECF Nos. 8, 56.

  Two days after the incident, Maddox submitted a grievance and claimed that he suffered eye strain and migraines related to the loss of his glasses, as well as shoulder pain, back stiffness and difficulty seeing from his left eye and difficulty hearing from his right ear.  ECF No. 59-4. Maddox further claims that he suffers rhinitis, anxiety and light sensitivity.  ECF No. 8.  The investigation summary reveals that immediately after the incident, Maddox was treated for OC exposure to his eyes and ears, but no other injuries were observed, and no other complaints were conveyed by him.  ECF No. 59-5 at 3. In support of his claimed injuries, however, Maddox presents a response to a grievance he submitted on August 24, 2020, three years after the incident at issue.

ECF No. 55-1.  The response summarizes medical treatment provided in the summer of 2020 and reveals that Maddox was prescribed Topomax, Motrin and Excedrin for migraines and headaches, and that he failed to appear for an evaluation of his hearing.  Id.  Maddox presents no other evidence supporting his injury claims, or connecting alleged hearing and vision issues, migraines or headaches to the use of OC spray three years earlier.

Apart from Maddox's OC exposure, the investigation summary reveals that Defendant Collins sustained a bite wound on his leg, Defendant Zuharanic suffered a knee strain injury, an unnamed officer sustained a wrist strain, and two guards, including Defendant Santi, suffered exposure to OC spray.   ECF No. 59-1 at 7; ECF No. 59-5 at 3.

Defendant Gumbert issued Maddox a misconduct for his behavior in the dining hall, including Maddox's refusal to obey an order, use of abusive language, and possession of contraband. ECF No. 59-3 at 1. Defendant Saylor issued a second misconduct related to Maddox's behavior outside the dining hall, including assault and threatening an employee, using abusive language, and refusing to obey an order. ECF No. 59-3 at 2.  Maddox appealed the first misconduct stating he was within his rights under applicable Department of Corrections policy to finish eating his meal and arguing that charging him with violating an order therefore was improper.  ECF No. 56-1.  Maddox appealed the second misconduct and while he did not deny the charges, he classified the incident as a "hate crime stemming from the incident in Charlottesville, Virginia on that same day." Id.

Maddox now seeks compensation for the use of force that he characterizes as a malicious response to his "participation in his right to eat the evening meal," and presents a motion for summary judgment summarily arguing that he has adequately established the violation of his Eighth Amendment rights.   Defendants present their cross-motion for summary judgment

contending that the relevant facts are not disputed, and that Maddox fails to establish an Eighth Amendment excessive use of force claim.

## II.      STANDARD OF REVIEW

### 1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### 2.  *Pro Se* Pleadings and Filings

*Pro se* pleadings and filings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should … be read 'with a measure of tolerance'"); Freeman v. Department of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997) (*overruled on other grounds*); see also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same).

Still, there are limits to the court's procedural flexibility — "pro se litigants still must allege sufficient facts in their complaints to support a claim .... they cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." Mala v. Crown Bay Marina, Inc.,

704 F.3d 239, 245 (3d Cir. 2013) (citations omitted). Thus, because Maddox is a *pro se* litigant, this Court will consider the facts and make inferences where it is appropriate.

## III.   DISCUSSION

In assessing a prisoner's claim that excessive force was used in violation of the Eighth Amendment, the inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Court examines several factors in making this determination, including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

The United States Court of Appeals for the Third Circuit has determined that the use of chemical agents "is not 'a per se violation of the Eighth Amendment....'" Passmore v. Ianello, 528 F. App'x 144, 147–48 (3d Cir. 2013) (quoting Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir.1984)). "Rather, '[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment.'" Id. (citing Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988)) (policy allowing use of taser guns on inmate who refused to submit to a strip search does not constitute cruel and unusual punishment); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (the use of tear gas "in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required."); Clemmons v. Greggs, 509 F.2d 1338,

1340 (5th Cir. 1975) (the use of tear gas when reasonably necessary to subdue recalcitrant prisoners does not violate the Eighth Amendment)); and see Gibson v. Flemming, No. 20-1669, 2020 WL 7775501, at *1 (3d Cir. Dec. 30, 2020) ("[t]he use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary.").

The undisputed evidence, including Maddox's own pleadings and exhibits, shows:  (1) that there was a need for the application of force; (2) that the relationship between the need and the use of force was reasonable; (3) a lack of injuries inflicted; and (4) efforts were made to temper the severity of the forceful response.  Maddox concedes that throughout the incident, he refused to cooperate by returning another inmate's meal, refused to leave the dining hall as ordered, refused to move to disciplinary custody, raised his hands when ordered to cuff up, and physically combatted efforts to restrain him.  The undisputed evidence further establishes that to the extent that Maddox suffered OC exposure, he immediately received medical treatment as well as ongoing treatment for headaches he attributes to the incident.  Finally, there is no medical evidence establishing hearing loss or any other injury related to the incident.  Under these circumstances and on the record presented, the use of force was unfortunately necessary to restore order and discipline, and there is no genuine dispute that force was not applied maliciously or sadistically but for the purpose of maintaining order.  Gibson v. Flemming, 2020 WL 7775501, at *3; Monroe v. Phelps, 520 F. App'x 67, 70 (3d Cir. 2013).[3]

_____

[3] At summary judgment, "where there are video recordings of the incident in question, we need not adopt the non-movant's version of the facts if the recording 'blatantly contradict[s]' the non-movant's version 'so that no reasonable jury could believe it.'" McDowell v. Sheerer, 374 F. App'x. 288, 291-92 (3d Cir. 2010) (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007)). In this case, video does not capture the initiation of the use of force. Accordingly, the Court accepts Maddox's representation that after raising his hands at Officer Collins and refusing to cuff up, his glasses were removed and OC spray was directed at his face to restore order.  The remainder of the incident was captured on video and even if viewed in the light most favorable to Maddox, reflects that force was not used maliciously and sadistically. See also McCullon v. Saylor, 2013 WL 1192778, at *14 (M.D. Pa. Mar. 4, 2013) ("[I]n assessing ... claims in a case where an encounter is captured on videotape we are mindful of the fact that when [the] 'videotape refutes [an inmate's] assertion that defendant[s] used excessive force,' or when the 'video shows that [an inmate] did not suffer any physical distress' ... we should conclude 'viewing the evidence in the light most favorable to [the inmate that], no reasonable

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is properly granted,

and Maddox's Motion for Summary Judgment is properly denied.  An appropriate order follows.


*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Dated: March 26, 2021


cc:     All counsel of record by Notice of Electronic Filing

        Omar Maddox
        JL-1018
        SCI- Forest
        PO Box 945
        Marienville, PA 16239

---

finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically,' and may enter summary judgment on the excessive force claim.") (quoting Tindell v. Beard, 351 F. App'x. 591, 596 (3d Cir. 2009)).